## ROCHON v. LECATT.

1. An agreement made before marriage between husband and wife, by which the husband relinquishes all right to the property of the wife, and agreed she should retain it to her own separate use, does not, in equity, bar the husband's right of curtesy.
2. Nor does a decree of divorce a *mensa et thoro*, pronounced against him, bar such right.
3. Nor an injunction granted in the lifetime of the wife, on her prayer, prohibiting the husband from intermeddling with her property.
4. The rule of construction on such an agreement is the same in equity as at law.

IN August, 1828, Nannette Rochon filed a bill in Chancery in the Mobile Circuit Court, against Littleton Lecatt, praying relief against a judgment at law which Lecatt had obtained against her, and in which he had recovered possession of a lot of ground in Mobile, and damages.

She charged in her bill, that in 1818, Mrs Anne Lecatt sold and conveyed the lot to one J. Champenois; that Champenois conveyed to one Dameron; he to McLoskey, and McLoskey to her; that Mrs Lecatt was formerly the widow of one Thomas Surtill, and that in 1813, she intermarried with L. Lecatt; that previously to her marriage, she and Mr Lecatt entered into and executed a marriage contract, which is in these words:

"Articles of agreement indented, made, &c. between Littleton Lecatt, sailing master in the United States' Navy, of the one part, and Anne Surtill, widow of the late Thomas Surtill, of the other part, as follows: whereas a marriage is shortly intended to be had and solemnised between the said Lecatt and Anne Surtill. It is therefore covenanted and agreed by and between the said parties to these presents, in manner and form following, that is to say: that the said Littleton Lecatt, by these presents, renounces all claim, right, title, or interest, to any part or parts of the estate of the late Thomas Surtill, in right of the said Anne Surtill, his intended wife; she to retain the said property of what nature soever, for her own use and benefit. In witness whereof, we have hereunto set our hands and seals, in the presence of subscribing witnesses, at the town of Mobile, Mobile county, Mississippi Territory, this 19th July, 1813.

(Signed)   "LITTLETON LECATT, [L. s.]
          "ANNE LECATT,       [L. s.]

"Attested by C. S. Stewart and W. R. Dodge, as witnesses, and Zeno Orso, Notary Public."

The bill further charges, that after the marriage, the parties lived a short time together unharmoniously, and that in February, 1814, in consequence of domestic differences between them, they mutually filed bills in Chancery against each other in the Superior Court of Mobile county. Mrs Lecatt prayed for a separation from bed and board, and an injunction to restrain the husband from meddling or interfering with the property intended to be secured by the agreement; and Mr Lecatt, in his bill, prayed that the agreement might be cancelled, and that his wife should be injoined from managing or intermeddling with the property. In June, 1814, a decision was made in said causes by Judge Toulmin, then presiding, who decreed a divorce from bed and board between the parties, and a perpetual injunction against Littleton Lecatt; and dismissed the bill filed by him, and dissolved the injunction which had been obtained by him against his wife. It is further alleged, that Littleton Lecatt, in obedience to the decree, ceased to intermeddle with the estate, and separated himself from his wife Anne, and left the State, but returned after the death of his wife, and though he never in her lifetime, after the decree, set up any claim to her property, yet that he has, notwithstanding the marriage contract, claimed the right of curtesy in her lands, and under that claim, recovered against the complainant, by a judgment at common law, the lot and $612 damages; that she, and she believes also those under whom she claimed, were entirely ignorant of any such right existing in him. All which proceedings, she alleges are contrary to equity, &c. wherefore she prays an injunction to restrain the defendant from enforcing his recovery at law against her.

The defendant, Lecatt, filed his answer, not controverting any of the facts, but resting his right on the construction given to the contract in the Court of law, and which was sustained in the Supreme Court, as being no bar to his right of curtesy.

According to an agreement between the parties, the facts of the bill stood as admitted; and at October term, 1828, a decree was rendered in the Circuit Court by consent, *pro forma*, dismissing the complainant's bill; from which she took an appeal to this Court, and now here assigns that decree as error.

ACRE, for the appellant. To sustain our right to relief on our bill, we rely on three propositions, which we believe are sustainable:

1. The contract was fairly entered into between the parties, for a valuable consideration, (marriage,) and it is clear and explicit in its terms.

2. A contract founded on such a consideration, ought to be enforced by the tribunal having the power to do so, whenever either of the contracting parties refuses to comply, and a compliance is demanded by the opposite party.

3. That all persons claiming under either of the parties, have a right to a specific performance of the contract, to the extent of the right or interest claimed by him.

If the contract was fairly made, which is admitted, ought not the intention of the parties to be carried into effect, when that intention is manifest from the terms of the contract? In the case of *The Methodist Church v. Jacques,*[a] the terms of the contract were not expressed in stronger language than in this case; yet the intention was there carried into effect. The object of the contract, says the Court, was to protect her against the debts, control, or interference of the husband, and the intention is too manifest to be mistaken; a Court of equity will certainly protect the wife in the enjoyment of the property according to the settlement. The doctrines runs through all the cases, that the *intention* of the settlement is to govern, and that it must be collected from the terms of the instrument. [b]

Marriage settlements are made to secure the wife and her offspring a certain support in every event; [c] but if the husband can, contrary to his agreement, become tenant by the curtesy, and thus defeat the object of the contract, by retaining the estate from the heirs, or by recovering it from a *bona fide* purchaser, how can her offspring, and especially her children by a former marriage, expect to obtain a *certain support,* which it was the intention of the contract to secure to them? [d]

Marriage is a good and valuable consideration; it is the foundation of this contract; and it is a general rule, that equity will execute marriage articles at the instance of all persons who are within the influence of the marriage consideration. [e] Are not purchasers from the wife, under such articles, within the influence of such marriage consideration. They certainly are, and the articles should be specifically enforced upon the prayer of such persons, to the extent of the right transferred by the purchase. They are the assignees of the wife, of a right which she, by the articles, had reserved the power to dispose of, and they stand in her place so far as regards the amount of interest assign-

JANUARY 1830

Rochon
v.
Lecatt,

a 3 John. Ch. R. 88.

b 3 John. Ch. R. 114. 3 Dess. 417.

c 3 John. Ch. R. 87.

d 3 John. Ch. R. 539, 540.

c 3 John. Ch. R. 550. 2 K. Comm. 144, 138.

JANUARY 1830.

Rochon
v
Lecatt

ed, and consequently are entitled to the same interference of equity that she would be, if she had never sold her right. If a Court of equity would "protect the wife in the enjoyment of her property according to the settlement," *a* surely it will not refuse the prayer of her legal representative, who occupies her place. The non-intervention of trustees is no objection to the carrying of the contract into effect; for it has been expressly decided that it is not now necessary that the legal estate should be vested in an indifferent person as trustee, in order that it may be carried into full and complete effect,*b* and technical words are not necessary to create a separate estate, or trust; *c* but the intention of the parties is to govern, and must be collected from the terms of the instrument. *d* Then if the intention of the parties to the contract is to govern, and if the intention is clear and plain as we have supposed, the only question which remains to be determined, is, whether a married woman, under a contract securing to her a separate estate, can sell and dispose of it without the concurrence of her husband.

A married woman acting with respect to her separate property, is, in all respects, competent to act as if she were sole. She may give, pledge or sell it; or make any other bargain with respect to it, with any person, in the same manner as if she were sole. In equity, she is considered as a feme sole, in regard to and to the extent of her separate estate, and the *jus disponendi* follows as a matter of course. *e* So entirely is the unity of person disregarded in equity, that she may even sell her separate property to her husband, and purchase property of him.*f*

If a woman living with her husband, and under his presumed influence, is thus favorably looked upon in equity, and is there so entirely considered as a distinct and separate person, that she may buy from or sell to her husband, much more should she in the same Court be considered as a feme sole, and beyond the control of her husband, in regard to her separate property, when she is separated from him by a judicial sentence, and has no protection but her own good conduct, and can hope for no support but from her own industry, management and good bargains.*g* Such was the case with Mrs Lecatt, when our purchase from her was made, and our right under her accrued.

The whole argument of the appellee, in opposition to our bill, seems to rest on the belief, that the question has already been decided by the Court of law. This idea is fal-

*a* 3 John. Ch. R. 87.

*b* 3 John. Ch. R. 457-8-9. 2 Kent, Com. 136. 2 Peere, Wms. 318, 319.

*c* 3 Atk. 503.
*d* 3 John. Ch. R. 114. 3 Dess. 417.

*e* Clancy on Rights of married women, 347. 3 Dess. 443, 447, 456, 459, 439. 11 Ves. Jr. 209 to 237 13 Vesey, Jr. 189. 1 Fontblanque, 96 to 100. 2 K. 136. Sec. 4. Newland on Contracts 25 17 John. 548.
*f* Clancy on Rights of married women, 351, 355. 2 Kent. 139.

*g* 2 Kent. 132, 136.

lacious: a Court of law never decides a question which is peculiarly appropriate to a Court of equity, but decides such questions only as belong to its own jurisdiction. For instance, if a man intending to convey real estate, make a deed without affixing a seal to it, he is not, in law, concluded by what he has done, and a Court of law will not undertake to supply the defect, but will permit him, though he is the vendor, and though he have received the consideration, to recover from the vendee the very same estate he had sold; but a Court of equity, looking to the intention of the parties, and not to the form of the instrument will injoin the vendor from doing what in good morals he ought not to do, and decree a specific performance of what the parties, at the time of making the contract, intended.

We are asked if Lecatt can be supposed to have surrendered a right not in existence at the time of his renunciation, that is, his tenancy by the curtesy. This interrogatory may be answered by asking another question: cannot a man oblige himself not to take a right which the law would give him, or which might, by the operation of peculiar circumstances, happen to accrue; and has he not done so? Whatever might be the result at law, he certainly did, in equity, "renounce all claim, right, title, or interest to the estate of his intended wife, which the intended marriage would give him." This contract, in the words just cited, cannot be considered as a renunciation of any right he might have had previous to the marriage, for it is not contended that he had any right before that event. What then was the contract intended to act upon? Rights afterwards to be acquired by the act, the benefits of which were relinquished. A sensible construction must be given to the contract, *ut magis valeat, quam pereat.* It must, therefore, have been such rights as the intended marriage would give him, that he renounced by the contract in question. The tenancy by the curtesy was a right incidental to the marriage, and surely, as well as all other marital rights, was renounced by the contract; " all claim, right," &c. to the estate of the intended wife is relinquished; is not the curtesy a right springing from the intended wife? If so, is it not renounced? How then, can the appellee "claim" a "right" to it in equity, in the face of his agreement. The Court is now asked to carry into effect the intention of the parties, regardless of the form in which they

JANUARY 1830.

Rochon
v.
Lecatt.

have expressed it. This prayer is peculiarly of equity cognizance, and not of that of a Court of common law, and therefore, cannot have been decided by that tribunal as supposed; the question is therefore, still open.

It is said that the rights of the parties depend on the construction of the marriage contract. In this idea we most cordially unite. What then is the meaning of the parties, and what construction ought to be put on the contract by which they intended to express their meaning, and to be understood?

We cannot conceive that the contract in question admits of any construction but this; that Mrs Lecatt reserved to herself, by that contract, the entire control of her own property, in the same manner as if she were to remain single; and that Lecatt renounced " all claim, right, title and interest" thereto, which the intended marriage would give him by law.

If he *intended* to renounce such rights as the law might give, how could he be tenant by the curtesy, in the contemplation of that tribunal which carries the *intention* of the parties into specific execution? [a] He might have been so at law, but if he were, he was so, just in the same manner that a man still remains at law the legal owner of real estate which he intended to convey, and thought he had conveyed, by making a deed of conveyance to which he had neglected to affix his seal. Equity would there declare him a trustee for the purchaser, and if, taking advantage of his legal rights, he had refused to do what was right, would compel him to do what he had agreed to do, and for the evidence of that agreement, that Court would look to the instrument he had signed. All we ask, is, that the Court should do so in this case.

*a* 3 John. Ch. R. 539. 2 P. Wms. 318, 319.

SALLE and KELLY, for the appellee, argued that neither the agreement, the injunction, nor the decree of divorce formed any bar to the appellee's right of curtesy.[b] They further insisted that the construction to be given to the articles of agreement, must be the same in equity as at law, and that its construction and legal effect having been determined on solemn argument in this Court, between the same parties, that the decision was obligatory and binding, and could not be departed from. They referred to the case reported in Talbot, where the question came up a second time, whether a widow could be endowed out of an equitable estate, in which Lord Thurlow observed with much regret that the law had been settled

*b* See the arg. and authorities in the case of Smoot and Nicholson v. Lecatt, and Rochon v. Lecatt. 1 Stew. Rep. pages 590, 609.

otherwise, that Courts could not depart from their former decisions, and that it required an act of parliament to change a rule of law. The case of *Benson v. Wilbey*, [a] was also cited, in which Twisden says, the Court cannot recede from prior resolutions and decisions. Blackstone says, [b] it is an established rule to abide by former precedents when the same points come again in litigation, as well to keep the scale of justice steady, and not liable to waver with every new Judge's opinion, as also because the law in that case being solemnly declared and determined, what was before uncertain and indifferent, is now become a permanent rule, which it is not in the breast of any subsequent Judge to alter or vary from according to his private sentiments. Judges often declare that if the question of law were *res integra*, they could decide otherwise; but consider themselves bound by the prior decisions. They referred to the voluminous notes of Christian, Chitty and Thomas, on the above law, as laid down by the commentator, also to Pothier, on the subject of *res judicata*; and to the remarks of Kent, [c] Burr, [d] Van Buren, [e] and Senator Cramer, [f] on the same subject. They insisted that in the absence of any authority, it must be manifest that such must be the rule; for when the Supreme Court had declared the law, that it became the law of the case, for there was no superior authority to decide otherwise; that there was a want of power in this Court in the same cause to decide differently; and that the consequences upon society if the rule were not so, would be injurious in the extreme.

By JUDGE SAFFOLD. The bill prays a specific performance of the *ante nuptial* contract, as far as the appellant is interested, and for relief against the operation of the judgment at law which the appellee has obtained against her. The answer does not deny any of the material facts charged, but rests the defence on the legal and equitable validity of the appellees title, and the confirmation it has received from the judgment at law rendered in his favor, in the suit between the same parties, and which has been recently affirmed in this Court.

That the estate was an inheritance of which the wife was seized; that the marriage actually took place; that there was issue of the marriage capable of inheriting; and that the wife had died previous to the institution of either suit; are facts which are not understood to be con-

JANUARY 1830.

Rochon
v.
Lecatt.

*a* 2 Saun. 155.
*b* 1 Black'st
Comm. 46.

*c* 1 Kent's
Com. 442.
*d* 2 Cowen,
340.
*e* Ib. 340, 360,
361, 369.
*f* Pages 394-5.

JANUARY 1830.

Rochon
v,
Lecatt.

tested in this suit, but on the contrary, they are admitted. Nor is it understood to have been contended in favor of the appellant, that the Chancery proceedings in favor of Lecatt and his wife, (which are admitted to be correctly set out in the record,) can have any material influence on the question, except so far as the divorce *a mensa et thoro,* can contribute validity to the conveyance subsequently made by the wife, or so far as it may tend to impair the right to curtesy, claimed by the husband. But the appellant relies for a recovery on the following positions: 1. That the marriage articles were fairly entered into for a valuable consideration, (marriage,) and that their terms are plain and explicit; 2. That Chancery, if not law, is competent, in case of failure to comply, to enforce such a contract, when sought by the party aggrieved; 3. That all persons claiming under either of the contracting parties, have a right to a specific performance of the contract, to the extent of the right or interest claimed.

Hence the entire controversy resolves itself into the question, what is now the legitimate effect of the ante nuptial contract. If the judicial determination which has been had was legal, or if it has a binding influence at present, it is conclusive of the right, unless it is the province of Chancery, subsequent to the decision at law, to arrest the recovery, and establish it on other and contrary principles. It appears from the views taken of the case in the former decision, and the authorities on which it was founded, that this Court was then of opinion that the right to the curtesy was sustainable, as well on the principles of equity as of law. It is true the opinion expressed more confidence as to the legal right, but it rested the decision mainly on Chancery authority.

*a* 1 Atk. 606.

In that decision, the case of *Roberts v. Dixwell,*[a] decided by Lord Hardwicke, was one of the authorities relied on. This subject, embracing the opinions of the same Chancellor, has recently been reviewed by Clancy, in his late treatise,[b] and whose authority is now referred to by the appellant. He says, (adopting the idea of Lord Hardwicke,) " if a trust estate is not such a one as is sufficient to bar the husband of his tenancy by the curtesy, the next question will be, whether a devise to the wife for her separate use, will bar him? I am of opinion it will not," for the reason, that there is a sufficient seisin in the wife. He also refers to a subsequent decision of the same Chancellor, in *Hearle v. Greenbank,*[c] in which the contrary

*b* Clancy on
Rights of
married wo-
men, p. 193.

*c* 3 Atk. 695.

JANUARY 1830.

Rochon
v.
Lecatt.

doctrine was held, " that where the profits had been given to the separate use of the wife, she was thereby made a *feme sole*; that the husband could have no legal seisin during the coverture; could neither come at the possession, nor the profits; nor could he have an equitable seisin, for that would be directly contrary to the father's intention; and neither in law nor in equity was the husband tenant by the curtesy." Thus it appears, as remarked by Clancy, " that his lordship in one case, considered the receipt by the wife of the rents, to her separate use, a sufficient seisin, to entitle the husband to curtesy; and in the other, that it was not a difference incapable of being reconciled; but that it had lately been decided, in conformity to Lord Hardwicke's first opinion, that a trust of an estate to a married woman for her separate use, does not prevent the husband's tenancy by the curtesy; that this decision was pronounced by the vice Chancellor, Sir John Leach, in *Morgan v. Morgan*, [a] where, previous to marriage, part of the estate of the wife was conveyed to trustees in trust for the separate use of the wife, for life, with power to her to appoint the fee, by deed or will, and for want of appointment, in trust for her, heir heirs and assigns.

[a] 5 Mod. 408.

The decisions above referred to, being urged in favor of the heir of the wife, after her death, in opposition to the right of curtesy, the vice Chancellor said " that as the two conflicting opinions of Lord Hardwicke could not be reconciled, recourse must be had to principle and analogy; that, as at law, where the wife, during coverture, is seised of an estate of inheritance, the husband, having had issue by her capable of inheriting the estate, is entitled to the curtesy; so where the wife is seised of an equitable estate of inheritance, and has issue capable of inheriting it, the husband is equally entitled to the curtesy; that in this case she had an equitable estate of inheritance, notwithstanding the rents and profits were to be paid to her separate use for life; that by the receipt of the rents, she was seised of the estate, and having issue capable of inheriting, the husband must be entitled to the curtesy."

The settlement in the case of *Morgan v. Morgan*, appears to have been more effectual and absolute than in the case at bar. There the conveyance was to trustees, in trust, for the separate use for the wife, for life, with power to her to appoint the fee by deed or will, and for want of appointment, in trust for her, her heirs and assigns; from which it might plausibly have been contended, the inten-

tion was to place all the interest in the estate entirely beyond the husband's reach or control, at any time and in any possible event. Such, however, under the policy of the law, favorable to the *jus mariti*, was not the judicial interpretation of the instrument.

The case mainly relied upon, in opposition to the right of curtesy, [a] is by no means decisive of the doctrine attempted to be sustained by it. It involved no question respecting the right to curtesy. That was a contest concerning the rents and profits during coverture. The contract was ante nuptial, and with a trustee for the intended wife, by which the husband agreed not to intermeddle with, or have any right, title, or interest, either at law or in equity, to any part of the rents, issues, and profits, or proceeds of the wife's property, real or personal; but it was, by the conveyance, to continue to remain and be to her, and it was provided that "after marriage, she should be permitted to hold and enjoy the same, and receive and take the rents, issues and profits, &c. to the end that the same should not be subject to the control, debts, intermeddling, or engagements of her husband, but should be to her only use, benefit and disposal." The wife's right to the rents, issues and profits, was protected, but nothing was expressed in the decision, from which an inference can be drawn that the husband would not have been entitled to curtesy, if the other legal requisites to such an estate had occurred. The same remark may be applied to the case of *Stewart v. Stewart*,[b] which was also supposed to have a material bearing on the question; nor can the divorce *a mensa et thoro* have the effect to bar the curtesy. This decision is not intended to convey any intimation of the opinion of the Court respecting either the legal or equitable interest of the appellant, after the death of Lecatt. The right to the curtesy only is now in question; and so far as this question is concerned, the Court feel no dissatisfaction with the principles of the former decision, and think them decisive of this controversy, as well in equity as at law, consequently that the decree of the Circuit Court must be affirmed.

By JUDGE CRENSHAW. When the case of *Lecatt v. Smoot & Nicholson*, was determined at a former term of this Court, I expressed what I conceived to be a sound interpretation of this ante nuptial contract, executed by Lecatt, previous to his intermarriage with Ann Sertill The subject is doubtless one of deep interest to the parties

*Margin notes:*

JANUARY 1830.

Rochon
v.
Lecatt.

*a* Meth. Epis. Church vs. Jaques, 3 John. Ch. R. 77.

*b* 7 John. Ch. R. 229.

concerned, and with me this was an additional induce-

ment to re-examine, and maturely deliberate again on that
part of my opinion which relates to the question before us.
In the opinion which I then pronounced, I endeavored to
shew, that by the terms of the instrument, Lecatt did "re-
nounce all claim, right, title, or interest, to any part of the
estate of Thomas Surtill," which he might acquire by virtue
of the intended marriage; that his relinquishment extend-
ed to any right or claim in that estate which might accrue
to him at the death of his wife, so as to bar his right to the
curtesy; that this, like all other instruments of writing,
should be construed according to the obvious meaning
and intention of the parties; that it being conceded on all
hands, that the contract did deprive Lecatt of all right to
the use and enjoyment of the estate during the life of his
wife, that from the generality of the terms used in the
contract, it must equally extend to a renunciation of any
right in that estate, which might result to him on her
death; that his right to the curtesy after her death, was as
much by virtue of the intermarriage, as was his right to the
use and enjoyment of the estate during her life; that more
emphatic language could not have been used, to bar Lecatt
of all right, in the estate which might be acquired by the
intermarriage, unless the right to curtesy in so many
words had been expressed; and that I deemed it unnecessary
to resort to any rules of construction, because the meaning
and intention of the parties were, to my mind, apparent be-
yond a doubt. I further insisted that if the contract created
a trust estate, it was not void for want of a trustee; and that
such a contract depriving Lecatt of his right to the curtesy,
could be successfully used in resistance to an action at law,
brought to recover his curtesy. But that the instrument
in question, as I conceived, bore no resemblance to a deed
of trust; nor did it create a trust estate, but was a mere
renunciation of a future interest, and which during the life
of Lecatt, was intended to leave the estate where he found
it, previous to his intermarriage. This was the light
in which I then viewed this contract, and which I consid-
ered to be its fair and legal interpretation; and now after
again hearing a full argument, and taking a closer exami-
nation of the authorities, the conviction of my mind is still
the same. I am still of opinion, that by the marriage
contract, Lecatt did clearly relinquish his right to the cur-
tesy. Independent of any rules of reason, I am inclined
to believe that I am well sustained in my conclusions by

the authorities referred to, and which have been read and explained by the counsel for the appellant. But though this was then, and still is my opinion, on the construction of the marriage contract, yet a majority of the Court in that adjudication determined otherwise; and decided that this contract afforded no bar to Lecatt's right to recover.

It then becomes important to inquire, whether this Court is now bound by an interpretation which they gave to the same contract, though between different parties, in a case on the law side of this Court, though in the present case we sit as a Court of equity.

That the rules of construing a contract are the same in both Courts, though the mode of proceeding and administering relief be different, is a proposition too plain to admit of debate. If a Court of law having competent jurisdiction, interpret a given contract, and decide that it does not take away the right to curtesy, a Court of equity is concluded by such decision on the same matter, and between the same parties; but generally it is otherwise when the suit is between different parties. But where the Judges to-day sitting as a Court of law, undertake to interpret a contract, and to decide on rights growing out of that contract; to-morrow, the same Judges sitting as a Court of equity, though in a case between different parties, ought to be governed by the principles of their first interpretation and decision, unless they believe it was manifestly wrong. If, in the case of *Lecatt v. Smoot & Nicholson*, a majority of the Court were of opinion that Lecatt's right to the curtesy could not be defeated by the marriage contract, it would at least argue much inconsistency for them now to act in direct opposition to their former opinion, and give a new construction to the same contract; though they sit as Chancellors, and the case is between different parties.

For the reason alone, therefore, that a majority of the Court are not ready as yet, to recede from their former construction and opinion, I do not dissent from the judgment now pronounced by the Court.

By JUDGE COLLIER. Believing the opinion of the Court in this case to be at variance with correct legal rule, with entire respect, I feel it due to myself to express the reason why I have yielded to it my acquiescence. The reason is briefly this: this Court, at July term, 1828, in a case at law between these parties, in which the same subject matter was in controversy, held that the ante nuptial

agreement did not divest the right of the appellee to the curtesy. It is true, that, according to the view taken by the Court, that case might have been determined in favor of the appellee, without interpreting the legal effect of the agreement; but the record fairly presented the question of exposition, and as the powers of a Court of law, after the death of the wife, were as adequate to its adjudication as those of a Court of Chancery, I am therefore denied the right to declare the result of my judgment.

The principle of the opinion of the Court, according to my conception, is this: that the husband cannot be divested of his curtesy, by an agreement entered into with his wife previous to, and in contemplation of their marriage, unless that agreement renounces it *in totidem verbis.* If there be any authority savouring of this notion, it has eluded my researches, and doubtless those of the counsel for the appellee. The authorities by which the opinion of the Court is attempted to be sustained, when examined, will, I apprehend, be found to lend it no assistance. The case of *Tabb v. Archer,* if it can be used in this case for any purpose, will, when examined *entirely,* be found to be an authority adverse to the positions which it is quoted as evidencing.

If the ante nuptial agreement was presented to a conveyancer as a memoranda, from which to draft a marriage settlement, would he not so draw it as that the husband's right to the curtesy would be relinquished, according to the rules of law as heretofore ascertained? Most certainly he would What else can be meant by these words: "That the said Littleton Lecatt, by these presents, renounces all claim, right, title, or interest to any part or or parts of the estate, of the late Thomas Surtill, in right of the said Anne Surtill, his intended wife," than a renunciation of all "claim, right, title, or interest," which the appellee might acquire, immediately on his marriage with "Anne Surtill," or on any contingency. This is a question to which it seems there can be but one answer.

I will not pursue the subject any farther, as I am denied the privilege of dissenting, but will remark, that whenever an analogous case shall come before this Court, I will treat it as *res integra,* in its adjudication.

Decree affirmed.